R. F. ABBAY, EXECUTOR, ET AL. v. HILL, FONTAINE & Co. AND
S. F. POWEL, AND HILL, FONTAINE & Co. v. S. F. POWEL,
R. F. ABBAY ET AL.

1. LIMITATION OF ACTIONS.  *Mutual and open current account.  Case in judgment.
   Section 2671, Code of 1880, applied.*
   R. for a series of years bought plantation supplies of H., a grocery merchant,
   and shipped to him cotton, which he, being a cotton factor, as well as a mer-
   chant, was expected to sell and account for.  H., without any express direc-
   tion, would sell the cotton and credit the net proceeds on R.'s account with
   him for supplies furnished the latter.  Section 2671, Code of 1880, provides
   that "in all actions brought to recover the balance due upon a mutual and
   open current account, the cause of action shall be deemed to have accrued at
   the time of the true date of the last item proved in such account."  *Held,*
   that the account kept by R., as above shown, was a "mutual and open current
   account" within the meaning of the statute quoted.

2. SAME.  *Will.  Trust for payment of debts.  Claims against estate.  Registra-
   tion of.*
   A will which expressly charges the estate of a testator, both real and personal,
   with the payment of his debts, and invests the executor with power to sell
   the whole or any part of his estate for the purpose of paying his debts,
   creates in equity an express trust in the executor for that purpose, and takes
   the debts out of the operation of the statute which requires all claims against
   an estate to be registered within twelve months after notice given by the
   executor, and leaves them subject (if to any limitation) only to the ten years'
   limitation of § 2696 of the Code of 1880 in relation to trusts not cognizable
   in courts of law.

APPEAL and Cross-Appeal from the Circuit Court of Tunica
County.

HON. J. G. HALL, Chancellor.

Richard Abbay, who was the owner of two large plantations in
Tunica County, and also a large amount of personal property,
appointed his son, R. F. Abbay, his agent, to conduct the plant-
ing and attend to all the business connected with these plantations.
In 1870 he had his account with Hill, Fontaine & Co., cotton
factors and grocery merchants in Memphis, changed from his own
name to that of his son.  From that date on R. F. Abbay would
buy provisions and plantation supplies from Hill, Fontaine & Co.
to carry on his father's planting operations, and then would ship

them cotton, which they would sell and credit the proceeds to the account of R. F. Abbay. This continued till the death of Richard Abbay. In July, 1883, Richard Abbay died, leaving a last will and testament in which he devised and bequeathed one-half of his estate to R. F. Abbay, one-fourth to Mrs. Mary S. Leatherman, and one-eighth each to his grandchildren, Mary Abbay Powel and William G. Abbay. R. F. Abbay was named as executor by the will, and he continued to carry on the planting operations just as before the death of his father, and the account with Hill, Fontaine & Co. was also continued.

The first and fifth articles of the will of Richard Abbay, deceased, are as follows:

" 1. I direct that all my just debts and funeral and testamentary expenses may be paid by my executor hereinafter named with all convenient speed after my decease, and I do hereby charge and make liable all and every my real and personal estate and effects, whatsoever and wheresoever, to the payment of the same, but I direct that my personal estate shall in the first place be applied to the satisfaction and payment of my said debts and funeral and testamentary expenses before resorting to the sale of any real estate therefor.

" 5. * * * And for the purpose of the speedy, full, and certain execution of this last will by the said R. F. Abbay, I do hereby direct and empower him, acting on his own best judgment and discretion, to sell all or any part or portion of my said estate real or personal (always selling the personal estate in the first instance as in this testament before directed), deferring this, however, to his judgment and discretion, for the purpose of paying the said debts and expenses. * * * *"

In August, 1885, Mary Abbay Powel filed a bill for a partition of the land and for an account of rents accruing after the testator's death. R. F. Abbay, Mary S. Leatherman, and William G. Abbay were made parties defendant. R. F. Abbay and Mary S. Leatherman filed an answer setting up that during the management of Richard Abbay's affairs and his estate by R. F. Abbay from 1870 to the time of the filing of the answer, R. F. Abbay

had, as the agent of his father during his life and as executor afterward, contracted a large debt with Hill, Fontaine & Co., which debt, though charged to R. F. Abbay, was in reality the debt of the testator; that this debt was still unpaid, and that a partition of the land could not be made until it was paid; that the will creates an express trust in the executor for the payment of this and the testator's other debts, and that the courts should enforce this trust. The answer is made a cross-bill, with the prayer that the court adjudge the Hill, Fontaine & Co. debt to be a debt against the estate of the testator and not against R. F. Abbay, and that the will be held to create an express trust in the executor for the payment of the debt.

The complainant answered this cross-bill averring that the claim of Hill, Fontaine & Co. had not been registered within twelve months after publication by the executor of a notice to the creditors of Richard Abbay, deceased, to come forward and register their claims, and therefore it was barred, and denying that any trust was created by the will which took the claim out of the operation of the statute requiring registration of such claims. Mrs. Powel, the complainant, having died, at the March term, 1886, of the chancery court, the cause was revived in the name of S. F. Powel, her sole heir and devisee. On March 31, 1886, Hill, Fontaine & Co., on their own application, were admitted as parties to this suit, and afterward filed an answer to the original and cross-bills, in which they set up their debt against the estate of the testator, and resist partition of the land until it is paid, claiming that the will creates an express trust in the executor for the payment of debts, and that their claim is not subject to the statutory bar in reference to registering claims against estates of decedents.

On August 2, 1886, Hill, Fontaine & Co. filed an original bill against R. F. Abbay individually and as executor of the will of Richard Abbay, deceased, Mrs. Mary A. Leatherman, S. F. Powel, and William G. Abbay, and praying that their claim be enforced against the estate of Richard Abbay, deceased, and against R. F. Abbay individually. S. F. Powel and W. G. Abbay answered this original bill, setting up the failure to register the

claim, and denying that the will created an express trust for payment of debts, and also the three years' statute of limitations against open accounts. R. F. Abbay and Mrs. Leatherman answered, admitting that Hill, Fontaine & Co. were creditors, pleading the failure to register their claim, and neither admitting nor denying that the will of Richard Abbay, deceased, creates an express trust for the payment of debts.

By consent of the parties these two cases were consolidated and tried together.

The Chancellor held that the account between Hill, Fontaine & Co. and R. F. Abbay was "a mutual and open current account" within the meaning of § 2671, Code of 1880, and that it was therefore not barred by the three years' statute of limitations against open accounts; that the claim of Hill, Fontaine & Co. was barred as far as the realty was concerned because of the failure to register within twelve months after publication of notice to creditors, the provisions of the will not taking it out of the operation of the statute, but that the undistributed personalty of the estate of Richard Abbay, deceased, was liable for their claim. An account was ordered to be stated between Hill, Fontaine & Co. and the estate of the testator, and a partition of the realty made between the several heirs.

Thereupon R. F. Abbay and Mrs. Mary S. Leatherman appealed, and also Hill, Fontaine & Co.

*Croft & Cooper,* for R. F. Abbay and Mary S. Leatherman, appellants and cross-appellees.

We insist that the will of R. Abbay, deceased, created an express trust upon his real estate for the payment of his debts.

The first clause of the will "*charges and makes*" liable all of his real and personal estate for the payment of his debts.

The fifth "*directs and empowers*" his executor to sell any or all of his real and personal estate for the payment of his debts, and gives his executor free discretion to sell either real and personal estate, as he may deem best, for the payment of his debts.

Now, we submit that the law in England and in Mississippi is substantially the same, by statute.

Here, and there, real estate of a decedent, whether he dies testate or intestate, is chargeable with the payment of all his debts upon a deficiency of personal assets, and in neither country can this liability be avoided, by will or otherwise.

The doctrine that land devised to be sold for the payment of debts, or *charged with debt by will* is equitable assets, and to be administered as such, still prevails in Virginia, North Carolina, and Kentucky, and is an important feature in their jurisdiction, notwithstanding there are statutes in those States similar to ours, making real estate of decedents legal assets for the payment of debts upon a deficiency of personalty. *Speed* v. *Morris,* 8 B. Monroe 499 ; *Bull* v. *Bull,* 8 B. Monroe 352 ; *McCandless* v. *Keene,* 13 Grattan 615 ; *Gaw* v. *Hoffman,* 12 Grattan 620 ; *Morris* v. *Morris,* 4 Grattan 293 ; *Henderson* v. *Benton,* 3 Ired. Equity 257 ; *Helm* v. *Darley, Adm'r,* 3 Dana 186 ; *Cloud's Ex.* v. *Adams,* 4 Dana 603 ; *Speed's Ex.* v. *Nelson's Ex.,* 8 B. Monroe 499.

If there had never been any statute in Mississippi making real estate liable for debts, clearly the real estate under this will would be equitable assets for the payment of debts, and a court of chancery would execute the trust and administer the real assets, upon the doctrine that equality is equity.

We submit that by no rule of construction known to the courts, can this act of the legislature of Mississippi be held to have abrogated the common-law right of a testator to charge his real estate with payment of debts.

We are aware that Perry, in his work on Trusts, announces the doctrine broadly that in the United States *trusts, charges,* or other directions in wills for the payment of debts have no legal operation so far as creditors are concerned. Perry on Trusts, § 559.

We submit that the authorities do not sustain Mr. Perry. We will not weary the court with an examination of his authorities; we will dismiss him with this statement, that we have carefully examined his authorities, and found that they do not sustain his text.

If this will charges the real estate of R. Abbay with the payment of his debts, and we think we have shown that it does, the

charge is certainly an *express one*, and being an express charge, we submit that the executor holds it in trust for Hill, Fontaine & Co. until their debt is paid, and that no statute of limitation can run against them, except the ten years' statute against express trusts. Code of 1880, § 2696; *Murdoch* v. *Hughes*, 7 S. & M. 219; *Hayne* v. *Bullard*, 1 C. 88.

In support of this position we further cite, *Alexander* v. *McMurry*, 8 Watts 303; *Bradley* v. *Brady*, 3 Harris 103.

Hill on Trustees, page 516, uses this language:

"It is settled, that a general devise or *charge by will* for the payment of debts out of *real estate*, will prevent the statute of limitations from running against such debts as are not barred at the time when the will comes into operation." Citing Story's Equity Jurisprudence, § 1521; *Blower* v. *Blower*, 5 Jur. N. S. 33.

Was any part of the debt of Hill, Fontaine & Co. barred by the three years' statute of limitations? Code 1880, § 2670.

The solution of this question depends upon the construction of § 2671, Code of 1880.

Now the question is, is this " *a mutual and open current account*" under the statute?

This statute has been construed by this court in the case of *Abbay* v. *Owens*, 57 Miss. 810. This case decides that cash payments upon an open account will not create a mutual and open current account under this statute. This is in accord with the authorities everywhere. Wood on Limitations, p. 595, § 278; *Webster* v. *Bynes*, 32 Md. 86; *Adams* v. *Carroll*, 85 Pa. St. 209; *Prenatt* v. *Bunyan*, 12 Ind. 174; *Dyer* v. *Walker*, 51 Me. 104; *Weatherwax* v. *Cosumnes*, 17 Cal. 344; *Adams* v. *Patterson*, 35 Cal. 122.

This case also recognizes the doctrine, that a sale and delivery of personal property at an agreed price, intended and accepted as a payment upon an account, does not "constitute the mutual and open current account contemplated by the statute."

We submit that this case is conclusive in our favor.

*Hill & Wilkerson*, for Hill, Fontaine & Co., appellees and cross-appellants.

1. We insist that the will of R. Abbay created an express trust for the payment of his debts, and our claim is not barred by any statute of limitation.

2. That Hill, Fontaine & Co. having filed their claim against the estate of R. Abbay before distribution of the estate and all the debts having been paid and sufficient assets left to pay said debt, that under § 2028, Code of Miss., their debt should be paid out of the assets of said estate, and that said estate is jointly liable with defendant, R. F. Abbay.

3. This is a mutual account, as shown by the evidence, and the evidence may be looked to to determine this question. See Angell on Lim. (6th ed.), § 144; 30 Cal. 126. See *Green* v. *Disbrew*, 35 Am. Rep. 498.

Payments in money do not make the account mutual, but a delivery of personal property to be accounted for, even at a price fixed, renders the account mutual. See 30 Cal. 126; 3 Metcalf 216; 57 Miss. 812; 79 N. Y. 1; same case, 35 Am. Rep. 496.

It is admitted that if Abbay had a right of action against Hill, Fontaine & Co., in that event the account would be mutual and the statute would not apply.

On this point see Wood on Lim., § 209; 5 Johns. Ch. 522; 2 Johns. Ch. 139. See also Wood on Lim., § 123; see top page same book 248, and also § 209. Cases cited, 20 Johns. N. Y. 576; 10 G. & J. (Md.) 422; *Clark* v. *Moody*, 17 Mass. 145.

It is the duty of a factor to account within a reasonable time without demand. *Eaton* v. *Walton*, 32 N. H. 352; 4 Sandf. N. Y. 590.

*Sam. Powel*, for S. F. Powel, appellee.

1. First it is insisted by appellants that the will created an express trust, by which the testator dedicated or set apart his land for the payment of his debts, and that Hill, Fontaine & Co.'s debt was the only debt he owed.

The statute of the State makes the property both real and personal of every testator or intestate liable for the payment of the

debts of the testator or intestate ; the personal property in the hands of the administrator or executor ; the real estate by a certain proceeding fixed by statute. The statutes of the State having made the real and personal property liable for the payment of the testator's debts, the clause in his will, " I hereby charge and make liable all and every," etc., is of no effect whatever. What were just debts referred to by said testator in his will ? Debts that were ascertained by law to be due and owing, proven and registered in the manner and as the law directs. Suppose the testator had excluded his personal estate from the payment of his debts? He could not even have done that. See Hill on Trustees 521. By the common law personal property was only bound for the payment of debts of intestate, except debts by specialty or of record. And hence, in England, trusts were created for the payment of debts by will. We deny that the will creates any such trust as is insisted upon by appellants, and if the will created a trust and set apart property specifically to pay the Hill, Fontaine & Co. debt, if they failed to have said claim registered as the law directs, they would be barred.

Perry on Trustees 559, says : " In the United States both real and personal property are liable for the debts of a deceased person, and no valid trust can be created by will for the payment of debts in either personal or real estate. The statutes of all the States point out how estates shall be administered for the payment of, etc. So absolute is this that the creditors do not hold the relation of *cestui que trust* to the trustee or other person appointed under the will to apply the property to the payment of debts. It is well understood that the statute of limitations does not run against a *cestui que trust* acknowledged to exist, but a trust or charge in a will upon certain property for the payment of debts creates no such relation between the trustee and creditor that the statute of limitations ceases to operate ; on the contrary, the claim of creditors against the estate of deceased persons will be barred by the statute of limitations, notwithstanding certain property is given in trust or charged with the payment of such claim." Also see *Carrington & Co.* v. *Manning's Heirs*, 13 Ala. 611. In

this case the testator in his will says : " It is my will that the interest which I have in a house and lot in the town of Huntsville, and together with my lots lying in the towns of Juana and Florence, be sold, and the proceeds applied to the payment of legacies and the discharge of my debts." The court held the claim must be presented for payment to the executor within eighteen months or it would be barred by the statute of non-claim. Also see Story on Jurisprudence 1521. Therefore we insist that even if the will had done more than the law does, and set apart certain property to pay debts, appellants would have to register their claim according to the laws of the State of Mississippi, and having failed to do that they can only look to the personal estate of said testator for the payment of their debt.

2. We insist that the court erred in holding that the statute of limitations of three years as plead by the executor of said estate did not apply to the account of Hill, Fontaine & Co., and in holding that the account of Hill, Fontaine & Co. constituted a mutual account against the estate of R. Abbay. The proof shows that the account of Hill, Fontaine & Co. commenced in the year 1870, and continued until the death of R. Abbay, in July, 1883; that during that whole period there never had been a settlement; that Hill, Fontaine & Co. were grocery merchants and cotton factors ; that their business was as grocery merchants to sell groceries and supplies and as cotton factors to sell cotton on commission ; that Hill, Fontaine & Co. furnished supplies and money to carry on the planting interest of Abbay. Abbay was to ship his cotton to Hill, Fontaine & Co. ; as cotton factors they were to sell it, charge their commissions, and with the money pay for the supplies thus furnished. This was done for a period of nearly fifteen years. Not a single article of merchandise or produce or property was ever sold by Abbay to Hill, Fontaine & Co. during this long period. The cotton raised was shipped by Abbay, sold by Hill, Fontaine & Co. as cotton factors, and the money paid or credited upon the supplies furnished. We insist this does not constitute a mutual account, as contemplated by our statute, between the parties. See Wood on Limitations 595 ; Angell on Limitations

149.   In the case of *Abbay* v. *Owens*, 57 Miss. 810, our supreme
court construes our statute upon the subject of mutual accounts.

*Waddell & Montgomery*, for W. G. Abbay, appellee.

1. An examination of the account sued on shows it to have
started several years ago, and to consist of items of money and
farming supplies, furnished by complainants, and credited with
payments made in cotton.   We do not think that there is anything
in the testimony in this case, or in the account itself, but what
bears us out in our statement that the cotton which was shipped to
and received by complainants was shipped to and received by
them (complainants) as payments on this account.

If we are correct in the proposition that the cotton shipped to
and received by complainants was intended for and applied as a
payment on the account, then there is no doubt of its being a
simple, open account, and falls within the limitation of the latter
clause of § 2671 of the Code of 1880.

In *Abbay* v. *Owens*, 57 Miss. 810, the supreme court lays down
the rule for determining this identical question.

2. Complainants claim that by the terms of the will of R. Abbay,
deceased, a charge was fixed upon his real estate for the payment
of his debts, and although the law of this State may be as above
quoted, yet, by reason of the charge created by the will and the
trust imposed upon the executor to carry it out, that the provisions
of the will take precedence over the law, and that their claim
should therefore be paid in full.   We do not agree with complain-
ants as to this construction of the will or of the law.   We do not
think that the mere declaration of the testator in his will that all
of his just debts should be paid, and authorizing the executor to
sell land to pay same, gives to creditors any further rights in the
estate than they already had by statute.   See Perry on Trusts
508, §§ 557, 558, and 559.

In the case of *Clark* v. *Hornthall*, 47 Miss. 470, Chief Justice
Peyton says : " There can be no doubt that in England, prior to the
statute making land assets for the payment of debts, the words in
this will, ' I wish all my debts to be paid as soon as possible,'
would have created a general charge upon all the land of the tes-

tator, which could have been enforced only in a court of equity. They would give no power by implication to the executor to sell. In this country there is no necessity to resort to implied powers, as the real estate of the decedent by force of the statutes in all the States become assets in the hands of the personal representatives for the payment of debts in all cases where the personal estate is insufficient for that purpose." Citing 3 Redfield on Wills 238, 288*.

ARNOLD, J., delivered the opinion of the court.

The account of Hill, Fontaine & Co. was not barred by the three years' statute of limitations. This account had never been settled. There were mutual dealings and reciprocal demands between the parties within three years, and the items on one side of the account might have been offset against the items on the other *pro tanto*. It was a mutual and open current account within the meaning of § 2671 of the code, which provides that " in all actions brought to recover the balance due upon a mutual and open current account, the cause of action shall be deemed to have accrued at the time of the true date of the last item proved in such account." *Abbay* v. *Owens*, 57 Miss. 810; Wood on Limitations, § 278.

It is claimed that the cotton delivered to Hill, Fontaine & Co. from time to time was so many payments on the account, and that the Abbays had no demands against them for it. This is not true for the reason that there was no agreement that the cotton should be accepted as payments on the account, but it was to be sold by Hill, Fontaine & Co. and the proceeds accounted for, and the Abbays might well have maintained suit for the value of the cotton if it had not been accounted for.

Under the construction placed on § 2028 of the code, by a majority of the court in *Ales* v. *Plant*, 61 Miss. 259, the claim of Hill, Fontaine & Co. was barred as to the real estate of which Richard Abbay died seized and possessed by reason of the failure to register the claim as the law required, unless the provisions of his will prevented this result. This will expressly charges the

estate of the testator, both real and personal, with the payment of his debts, and invests his executor with power and discretion to sell the whole or any part of his estate for the purpose of paying his debts. Charging his debts upon his real estate in this manner amounts to the same thing in equity as if the testator had devised it expressly in trust to pay his debts. Hill on Trustees 527.

Here, where the estate of a decedent, real and personal, is liable for the payment of his debts, a trust on real estate for that purpose will not be implied or derived from ambiguous or uncertain testamentary provisions. *Stylle* v. *Stylle*, 64 Ala. 438. But § 1984 of the code provides that "whenever any last will and testament shall empower and direct the executor as to the sale of property, the payment of debts and legacies, and the management of the estate, the directions of the will shall be followed by the executor, and no provisions herein contained shall so operate as to require the executor to pursue a different course from that prescribed in the will, if it be lawful," and if a testator chooses to create such trust on his real estate and his creditors do not object, it is not unlawful for him to do so.

In our view this was what Richard Abbay intended and declared by his will, and his estate was thereby taken out of the ordinary course of administration, and the only statute of limitations, if any, which operated against his creditors was the ten-year statute of § 2696 of the code, which applies in case of the existence of a trust not cognizable by the courts of common law, etc.

There may be found statements to the contrary, but in the absence of a statute like the one last referred to above, the doctrine is well settled that a general devise or charge by will for the payment of debts out of real estate will prevent the statute of limitations from running against debts that are not barred at the death of the testator. Hill on Trustees 516, 541. *Stylle* v. *Stylle*, 64 Ala. 438 ; *Templeton* v. *Tompkins*, 45 Miss. 424.

The Chancellor erred in holding that the real estate of which Richard Abbay died seized and possessed was not liable for the payment of his debts, and in ordering an account to be

taken and stated on that basis. In other respects the decree is right.

*For the errors indicated the decree is reversed and the cause remanded for further proceedings in accordance with this opinion.*