CHARLES A. GORDON, ADMINISTRATOR, *v.* JOHN McDOUGALL
ET AL.

1. WILLS. *Construction. Express trust. Payment of debts.*

> A will creates an express trust for the payment of the testator's
> debts, which by its various items provides (1) for the payment of
> the debts as soon as it can be done without injury to the estate;
> (2) for the payment of one hundred dollars and an annuity to a
> servant; (3) that the testator's widow shall have all of his
> personal property during her life, with power to sell and dispose
> of it as she might see fit, but in such event the proceeds to
> be placed in the corpus of the estate, subject to the provisions
> of the will; (4) for the sale of encumbered real estate in another
> state "as soon as can be done without too great loss," with dis-
> cretion to lease or sell at public or private sale and authorizing
> the extension of the payments due on the property or the re-
> newal or execution of other judicious loans and mortgages to
> pay the encumbrance; (5) full power for the executors to carry
> on and cultivate the testator's plantations or to lease or sell
> any and all real or personal property of the testator in this
> state, which may be deemed expedient to pay debts, but direct-
> ing certain pieces of land to be reserved until the last; (6) that
> the widow shall claim no allowance and charge no commissions
> for services rendered the estate, but shall be allowed a reason-
> able amount for the support of herself, family, and household, to
> be charged against testator's estate and be decided by her own
> judgment; (7) that the executors shall, "subject to the fore-
> going articles," have the entire control of the estate, and the
> widow the entire use of the income, rents, and profits thereof
> for her life, with power to dispose of one-fourth of the estate re-
> maining at her death by will, in default of which the one-fourth
> was to remain a part of the estate; and (8) for the disposal of
> the remainder of the estate, subject to the life estate of the
> widow.

2. SAME. *Code* 1892, § 1838. *Statute of limitations on probating claims.*
   *Code* 1892, § 1933.

> The statute of limitations, Code 1892, § 1933, providing that claims
> against the estate of a decedent shall be barred unless probated
> within one year after the publication of notice to creditors to
> probate their claims, has no application where the will of the de-

cedent creates an express trust for the payment of debts, under Code 1892, § 1838, providing that executors, whenever empowered by the will to pay debts, shall follow the directions of the will, as well as the general principles applicable to express trusts.

·3. WILLS. *Accounting. Unprobated claims.*

Executors who have paid unprobated claims against the testator's estate, in conformity with the directions of a will, creating an · express trust for their payment, should be credited therewith in their accounts.

FROM the chancery court of Claiborne county.

HON. WILLIAM C. MARTIN, Chancellor.

Exceptions by McDougall and others, appellees, to the accounts of Gordon, appellant, as administrator of the estate of J. H. Gordon, deceased, executor of the estate of L. N. Baldwin, deceased. From a decree for exceptors the administrator appealed to the supreme court.

*H. C. Mounger,* for appellant.

The will of L. N. Baldwin creates an express trust for the payment of debts. 8 Am. & Eng. Ency. Law (2d ed.), p. 1083; *Abbay* v. *Hill,* 64 Miss., 340 (1 South., 484); Beach, Wills, secs. 245, 247; *Morse* v. *Hackensack Sav. Bank* (N. J. Err. & App.), 20 Atl., 961 (12 L. R. A., 62); Hill, Trustees, 516, 541; *Steele* v. *Steele's Adm'r,* 64 Ala., 438 (38 Am. St. Rep., 15); *Templeton* v. *Tompkins,* 45 Miss., 424; Lawson, R. R. & P., sec. 1979; Pom. Eq., sec. 1009; *Norman* v. *Burnett,* 25 Miss., 183; Story, Eq., sec. 1058; *Morrison* v. *Kinstra,* 55 Miss., 71; Tiedman, Eq., sec. 290; *Cooper* v. *Cooper,* 61 Miss., 676; *King v. Bishop,* 62 Miss., 553; *Heatherington* v. *Lewenberg,* 61 Miss., 372; *Westbrook* v. *Munger,* 62 Miss., 316; *Turner* v. *Turner,* 57 Miss., 775; *Cady* v. *Cady,* 67 Miss., 425 (7 South., 216); *Clark* v. *Hornthal,* 47 Miss., 434; *Perkins* v. *First National Bank of Yazoo City* (Miss.), 33 South., 18; *Peebles* v. *Acker,* 70 Miss., 359 (12 South., 248); *Stewart et al.* v. *Robin-*

*son* (Miss.), 31 South., 903; *Henry et al.* v. *Henderson* (Miss.), 33 South., 961 (63 L. R. A., 616).

*Pintard & Ratcliff,* on same side.

Counsel cited the following cases: 8 Am. & Eng. Ency. Law (2d ed.), p. 1083; *Abbay* v. *Hill,* 64 Miss., 340 (1 South., 484); *Smyth* v. *Caswell,* 65 Tex., 379; *Pleasants* v. *Davidson,* 34 Tex., 460.

*J. McC. Martin,* and *E. S., J. T.,* and *H. W. M. Drake,* for appellees.

The will of L. N. Baldwin does not create an express trust for the payment of debts. *Abbay* v. *Hill,* 64 Miss., 340 (1 South., 484); *Norman* v. *Burnett,* 3 Cushm., 188; *Combs* v. *Brown,* 29 N. J. Law, 36; *Ferry* v. *Laible,* 31 N. J. Eq., 566; Dickerson's Appeal (Pa.), 8 Atl., 64 (2 Am. St. Rep., 550); Bispham's Eq., 117 *et seq.; Steele* v. *Steele,* 38 Am. St. Rep., 20; Perry, Trusts, sec. 559; *Collamore* v. *Wilder,* 19 Kan., 67; *Carrington* v. *Manning's Heirs,* 13 Ala., 611; *Agnew* v. *Fetterman,* 45 Am. Dec., 671; *Gwin* v. *Nettles* (Miss.), 18 South., 798.

Gordon, the executor, should not have paid unprobated claims. Section 1933, Code 1892; *Ales* v. *Plant,* 61 Miss., 259; *Nagle* v. *Ball,* 71 Miss., 331 (13 South., 929); *Robinett* v. *Starling,* 72 Miss., 653 (18 South., 421).

WHITFIELD, C. J., delivered the opinion of the court.

In July, 1893, L. N. Baldwin died, leaving a last will and testament, dated July 8, 1890, naming his friend, J. H. Gordon, and his wife, Mary J. Baldwin, executor and executrix of his estate. That will is as follows:

"In the name of God—Amen: I, Lemuel N. Baldwin, of the town of Port Gibson, and state of Mississippi, of sound mind and disposing memory, do make, ordain, and publish this as my last will and, hereby annulling and revoking all wills heretofore made by me.

"Item 1st. I do hereby direct that all of my just debts be paid as soon as can be done without injury to my estate, and that my mortal remains be interred in a suitable square in the Port Gibson cemetery, and a proper monument to my memory be thereon erected.

"2nd. In addition to my previous gift of one hundred dollars to my old and faithful servant, Sukey Russell, I give her one hundred dollars to be expended in repairs on her house in Port Gibson, and the sum of ten dollars per month, payable on the first of each and every month, for and during her natural life.

"3rd. In case George Russell, Jr., shall, at the date of my death, be indebted to J. H. Danjean for and on account of his contract of $225.00 for building him a house on the lot conveyed to him by his mother and myself and wife in Port Gibson, I appropriate out of my estate a sum not exceeding two hundred dollars to pay said debt if so much is unpaid, but no more than the balance due said Danjean.

"4th. My gold watch and chain and buttons I give to my nephew, John Field McDougall, and my gold-headed cane I give to my nephew, Aaron D. Baldwin.

"5th. I give and bequeath to my beloved wife, Mary Jane Baldwin, all my personal property, including paintings in my residence and upon my premises, and carriage house property, for and during her natural life, with power to sell and dispose of the same as she may see fit; but in such event the proceeds are to be placed in the corpus of my estate subject to the provisions hereinafter specified.

"6th. I hereby expressly direct my executors hereinafter appointed, to sell as soon as can be done without too great loss, my two marble-front houses and premises in the city of Chicago and state of Illinois, originally numbered Nos. 121 and 123 on Calumet avenue, and for that purpose my executors are hereby authorized to lease or sell, in their discretion, at public or private sale, said premises separately or otherwise, and execute titles thereto to the purchasers as fully as I could do if alive. And

in case of sale the incumbrances, now about $21,000.00, must be paid and the balance accounted for in my estate in Mississippi. And in case of a nonsale my executors are hereby authorized to extend the payments, renew the same, or execute other judicious loans and mortgages, to pay said $21,000.00 on said premises as fully as I could do now.

"7th. I do hereby give to my executors, hereinafter named, full power to carry on and cultivate my plantations or to lease the same, in their discretion, and to sell here or to ship any and all crops to New Orleans for sale, as I have heretofore done. And they are fully authorized to sell at private or public sale or sales, in their discretion, any and all personal and real estate of mine in this state which may be deemed necessary or expedient to pay my debts, and execute the proper titles to the purchasers.

"But I do hereby request that in such case my five places on the Bayou Pierre, in this county, and my place on Tchula Lake, in Holmes county, be held to the last, and other lands first sold, and all reported to the chancery court.

"8th. I desire that my said wife claim no 'allowance' and charge no commissions for services against my estate, but that she be allowed a reasonable amount for the support of herself, family, and household, to be charged in her account against my estate, to be decided by her own judgment.

"9th. Subject to the foregoing articles, I give to my said executors the entire control of my estate, and to my said wife, Mary Jane Baldwin, the entire use and incomes, rents and profits thereof, for and during her natural life, with power to dispose of one-fourth of my estate remaining at the time of her death, by last will and testament, in default of which the said one-fourth shall remain as a part of my estate and lapse.

"10th. Subject to the life estate of my said wife, and on her death I give, devise, and bequeath to my nephew, Aaron D. Baldwin, my niece, Fannie Baldwin Haines, my grand-niece, Fannie Baldwin Durland, the one-half of my estate in equal

portions; and to my nephew, John Field McDougall, one-fourth of my said estate, to be held in trust by John H. Gordon until he shall attain the age of twenty-one years, said Gordon to pay him only the income. And I do hereby make and declare the said A. D. Baldwin, Fannie B. Haines, Fannie B. Durland, Bessie E. Haines, and John Field McDougall to be my legatees and devisees.

"11th. I have purposely left my wife independent of her and my relations, knowing that she will do right and will aid them as her judgment decides and their consideration for her may justify. I want no interference in behalf of her or my own relatives. My bequests and devises to her are in full of all claims on my estate.

"12th. I do hereby constitute and appoint my wife, Mary Jane Baldwin, and my friend, John H. Gordon, to be executors of this my last will and testament, and I do expressly relieve them from giving security for acting as executors.

"13th. In case of the death or nonqualification of John H. Gordon as executor of this will, I do hereby nominate and appoint my friend, John A. Shreve, as executor, with same duties and powers and conditions conferred on said Gordon, and in that event I request him to qualify at once as executor in the chancery court.

"Thus done and this page and the three preceding pages written wholly by me and in my own handwriting, this the 8th day of July, A.D. 1890.          L. N. BALDWIN.

"Witnesses: James W. Person, Charles D. Wharton, Thos. M. Rea.

"Filed August 16th, 1893.          A. K. JONES, *Clerk.*

"Recorded in Will Book No. 3, pp. 142-144."

Six accounts were filed, the executors having in the meanwhile taken charge of the decedent's property, cultivated the farms, managed it all as directed in the will, collected debts owing to the estate, and having paid debts due from the testator; selling for this purpose both real and personal property, some-

times with, sometimes without, an order of the court. They paid unprobated claims, a report of which was made in all their accounts. On March 17, 1900, Mrs. Mary J. Baldwin having died in the meanwhile, exceptions were filed to these accounts, seeking to charge the surviving executor, J. H. Gordon, with the amounts which he and the executrix, Mrs. Baldwin, had paid out on unprobated claims, notice to creditors to prove their claims within the year having been duly made. The solution of the question here involved depends upon whether the foregoing will created an express trust for the payment of debts of the testator. Let us see what the environment was. Let us put ourselves in the place of Mr. Baldwin at the time he made his will, as an aid in arriving at his intent with respect to charging his estate with his debts. For the only way fairly to ascertain the true intent of a testator is not to look to any single sentence or special provision, but to gather that intent from the whole will, so that the paramount purpose dominating the instrument shall be given effect. Says the court in the case of *Watkins' Ex'rs* v. *Snadon* (Ky.), 20 S. W., 701 (40 Am. St. Rep., 205): "The language employed in a single sentence is not to control, as against an evident purpose shown by the whole instrument. Effect is to be given to the general intent, and this, we think, is shown throughout the will." Again, in the case of *Murphy* v. *Carlin* (Mo.), 20 S. W., 786 (35 Am. St. Rep., 701, 702), the court say: "The true intent and meaning of the testator can be best ascertained by the courts and those concerned in the execution of the will by putting themselves, so far as may be, in the place of the testator, and reading all his directions therein contained in the light of his environment at the time it was made. When that intent and meaning can be thus clearly ascertained, then all technical rules and adjudicated cases in other jurisdictions that would stand in the way of its execution must be disregarded." See also *Morse* v. *Hackensack Savings Bank* (N. J. Err. & App.), 20 Atl., 961 (12 L. R. A., 62).

Mr. Baldwin had been a member of the Claiborne county bar for a number of years, and was engaged in planting. His property consisted mainly of five places in that county, on the Bayou Pierre; one in Holmes county, on Honey Island; and a double marble-front dwelling in the city of Chicago, incumbered for about $21,000. At the time of his death he owed about $50,000. He seems to have been a man who took great pride in paying his debts and in keeping his credit good. At that time cotton was at a very low price, and remained so during the years while these executors managed this estate. By very careful management a large part of the debts has been paid off, and $40,000 saved for these exceptors. Undoubtedly if suit had been brought by the creditors, the estate would have been wholly absorbed. Mr. Baldwin knew this. He further knew that he could not live to pay off his indebtedness. His wife, at the time of the making of the will, was a very old lady. Some of these debts were debts in respect to which he stood in trust relations. He knew that it would take a number of years to pay his debts, if anything was to be saved from his estate. He had no child. It turned out that the Chicago property, when sold, just about paid the debt on it. This being the environment, let us look at the provisions of the will bearing specially on the question involved. In the first item of the will he directs that all his just debts, as soon as can be done "without injury to his estate," be paid. If the executors had to take the law, and not the will, as their chart, then the debts were exigible without reference to the injury to his estate. This reservation, therefore, has at least this significance: that his executors were not to sell the property as soon as they might be compelled to sell it under the law, if that would result in injury to his estate. In the second item of his will he gives Sukey Russell $100 *in solido,* and an annuity of $10 per month, payable on the 1st day of each month, during her natural life. This evinces his purpose that the estate on which this annuity was a charge, to last as long as Sukey Russell lived, was, if possible, to be saved from sale.

Here is a charge fixed upon the estate for an indefinite time. The fifth provision of the will gives to his wife, not the fee simple in the personal property named therein, but simply a qualified use of the same for her life; expressly stipulating that, in case she should sell such property, the proceeds should be covered into the corpus of his estate, subject to the provisions following in the will as to debts, etc. In the sixth provision of his will he again, in directing the sale of the Chicago property, manifests his concern that the property shall not be sacrificed, by directing that sale should be made by his executors as soon as could be done without too great loss, and by further directing that, if they thought best, instead of selling, they might lease the same, with authority to extend the time of payment on the notes, and to renew the notes, and to make other loans on the faith of the property. All this shows the utmost care that, whilst the property should respond to the debts, every available means should be used to prevent its sacrifice, to the end that there might be a balance, which balance he directs to be covered into his estate in Mississippi for the uses of the will. The seventh provision of the will gives to the executors full power (1) to carry on and cultivate his plantations; or (2) to lease the same, in their discretion; or (3) to sell at private or public sale, in their discretion, any of the personal or real estate of the testator in this state which may be deemed necessary or expedient by the executors to pay his debts, and to execute the proper titles to the purchasers. It further authorizes the executors, in carrying on and cultivating his plantations, to sell at home or ship any and all crops to New Orleans for sale, just as he had always done. Here is a clear contemplation of the carrying on and cultivating of his plantations in the same manner in which he had done when alive, and this is supplemented by full power to sell, as they deemed necessary or expedient, any of his estate, real or personal, and that, too, at public or private sale, for the purpose of paying his debts. Here the testator has blended in one common mass his real and personal estate, oblit-

erating all differences which the law makes between the two as
to the order of liability in the payment of debts. Empowering
the executors to execute proper titles to purchasers is in all
respects substantially equivalent to devising the property to the
executors for sale for payment of debts. *Clark* v. *Hornthal,* 47
Miss., 434. And to make it perfectly clear that his purpose was
not to sell if it could be avoided by a gradual payment of debts
out of the proceeds of the crops in the course of the years, he
adds, in the conclusion of this clause, a request that, in case of
sale, his five places on Bayou Pierre and his place in Holmes
county be held until the last, and other lands be sold first. This
clause, taken in connection with what has gone before, presents
necessarily this plain scheme: That his property should be dealt
with by his executors, not as the law would have dealt with it,
by immediate sale, without reference to the injury to his estate,
but so as to pay off, if possible, the debts from the income, and
not to sell till the last resort, and then to sell in the priority
specified by this seventh clause. The eighth provision of his
will is remarkable in requesting his wife to claim no allowance
and to charge no commissions, but to be satisfied with a reason-
able amount "for the support of herself, family, and household,"
to be fixed by her own judgment; and this becomes significant
when, taken in connection with the ninth clause of the will,
which expressly declares that he gives to his said executors the
entire control of the estate, and to his said wife the entire use,
rents, and profits thereof for and during her natural life, with
power to dispose of one-fourth of the remaining estate at the
time of her death, but all this subject to the foregoing eight
articles of his will. We take the true construction of these
clauses to be that Mrs. Baldwin did not take a life estate in
the real estate, out and out, but that she took only a life estate
in what remained after his debts should have been paid. She
took a life estate "subject to the following eight articles." One
of these very articles denies her any allowance as a widow and
any commissions as an executrix, but limits her to such sums for

maintenance as she should claim. This is utterly inconsistent with the idea that she had an absolute life estate in the realty, but is in strict accord with his paramount purpose of paying, at all events, his debts. Under clause 5, dealing with his personal estate, she was not to have the personal estate for life in an absolute sense—that is to say, if she sold it and converted it into money, she could not take the interest on the money, but the whole proceeds were to be covered into his estate for the use of the will. How it is possible for the testator to manifest more emphatically a proud-spirited purpose to pay, first of all, and at all events, his debts, than this testator here has manifested for that purpose—first by a provision directing his wife, if she sold the personal estate, to cover the proceeds into his estate for the uses of the will; secondly, by a provision that she shall have a life estate in the realty, subject to clauses looking to the payment of debts; thirdly, by a clause actually denying to his wife either an allowance or commissions, and limiting her to mere maintenance—we cannot comprehend. Add to this an annuity for the indefinite term of the life of the annuitant; provisions looking to the indefinite cultivation of farms, and the payment of debts out of the crops; the full power of public or private sale of real or personal property, in the absolute discretion of the executors, for the payment of debts, coupled with the further power to make title to the purchasers, and how widely different this case is from *Gwin* v. *Nettles* (Miss.), 18 South., 798, must appear at a glance. It may be remarked that, if Mrs. Baldwin took an absolute life estate, these exceptors would have no standing to question her disposition of the income. *Byrd* v. *Wells,* 40 Miss., 711; *Henry* v. *Henderson* (Miss.), 33 South., 961. But we agree with the learned counsel for the appellees that she did not take a life estate, except in what was left after debts should have been paid. We draw from this, however, a very different conclusion from that reached by learned counsel for appellees. To our thinking no more supremely significant declaration of his purpose that his debts should be paid at all events could

have been furnished by Mr. Baldwin than he does furnish us in this clause, limiting even the life estate devised to the wife to so much only as should remain after the payment of all debts.

We are clearly of the opinion, without protracting these observations, that Mr. Baldwin's will created an express trust for the payment of his debts, and consequently that, under § 1838, Code 1892, as well as the general principles applicable to such trusts, the statute of limitations invoked against these unprobated claims is no bar, and the executors were fully justified in the payment of the same. We have made no extended reference to authorities, since they have been very ably collected in the briefs on both sides. The principles announced in the cases of *Perkins* v. *First Nat. Bank of Yazoo* 81 Miss., 358; s. c., 33 South., 18, and *Abbay* v. *Hill,* 64 Miss., 340 (1 South., 484), cover the case perfectly. See also *King* v. *Bishop,* 62 Miss., 555, and Story's Equity Jurisprudence, sec. 980.

The decree is reversed, and the cause remanded to be proceeded with in acordance with this opinion.

*Reversed.*