## Cudahy Packing Co. v. C. E. Miller's Estate.

[60 South. 574.]

1. Estate of Decedents. *Proof of claim. Sufficiency of affidavit. Trust. Constitution. Trust to pay debts. Code 1906, section 2106.*

   In probating claims against the estate of decedents it is necessary under Code 1906, section 2106, so providing, that the affidavit attached to the claim should specifically state that the claim "is not usurious" although it may appear from an inspection of the claim that it is not usurious.

2. Trust to Pay Debts. *Construction. Code 1906, section 2106.*

   Since all the decedent's property is charged by law with the payment of his debts, a trust to that effect, which would render inoperative probably several provisions of the statute enacted for the safeguarding of estates, will not be inferred from language in a will directing the manner in which this duty shall be performed, unless such clearly appears to have been the testator's intention.

Appeal from the chancery court of Tunica county.
Hon. M. E. Denton, Chancellor.

Suit by Cudahy Packing Company against the estate of C. E. Miller, deceased. From a decree sustaining an objection by the executor to plaintiff's claim, it appeals.

The facts are fully stated in the opinion of the court.

*Carroll, Scott & Fisher*, for appellant.

The petition and affidavit attached thereto are in substantial compliance with section 2106 of the Code of 1906. Substantial compliance with the statute is all that is required. *Chaeirs* v. *Chaeirs*, 81 Miss. 663; *Walker* v. *Nelson*, 87 Miss. 268; *Bankston* v. *Copeland*, 55 So. 48.

The claim of the Cudahy Packing Company, quoted above, is in the form of a petition. It is in writing and sets forth all of the facts therein affirmatively required by section 2106 of the Code of 1906. This petition is signed by the Cudahy Packing Company. Attached to

the petition is an affidavit, stating as follows: "That the foregoing account embodied in the claim filed is due, just and owing; that the facts set forth in the claim are within his own knowledge, he having investigated the facts as agent and attorney, for the claimant and he knows them to be, as in the claim set forth, to be, accurately and truthfully stated." The affidavit attached thereto and signed by the agent of the Cudahy Packing Company is identically the same as is in the affidavit. The entire statements made in the petition and claim attached thereto had been restated *in hac verba* in the affidavit; and, if the facts set forth in the petition, as sworn to, conform with the affidavit required to be made under section 2106, is it a compliance with the statute.

There is one other cause of contest in paragraph 5, which is, that the affidavit fails to state, "that it is not usurious." There is not in the affidavit and the petition a statement in the words "that it is not usurious;" but, as substantial compliance with the statute is alone necessary, it affirmatively appears in the petition that the account is not usurious and affirmatively appears as distinctly and positively stated as though the words "that it is not usurious" were used in the affidavit.

Usury is as follows: "To constitute usury there must be an agreement between the lender and the borrower, knowingly, because he promises, and the lender knowingly takes or receives a higher rate of interest than the law allows, with the intention to violate the statute." *Planters Bank* v. *Snodgrass*, 4 How. (Miss.) 573. The statute provides, section 2678: "If a greater rate of interest than ten per centum shall be stipulated or received in any case, the interest shall be forfeited," etc. To constitute usury, therefore, there must be an agreement between the parties to take a greater rate of interest than that allowed by law. On the face of the petition it appears that the debt is made up of separate invoices, giving the date, the number of pounds and the product, with the price per

hundred weight, and there are about a hundred different items, aggregating the sum of $3,444.28, extending over a period of several years.

Therefore, in an open account, such as this, with the price of every particular item given, there can be no usury. It might be possible to overcharge, but it is not possible in dealings between a merchant and his customer, in an open account, for the sale of meat at particular prices, to charge usury; and I have found no case in which it is held that in an open account it is necessary to state that the account is not usurious where it appears from the face of the account that no usury was charged, and where in the petition the prayer was "that the account and every item thereon, with proper interest, be allowed." But while this would seem to be conclusive, yet the petition itself sets forth the fact that the account arose by reason of connivance of Miller with one of its shipping clerks, whereby the shipping clerk shipped to and was paid for products of the Cudahy Packing Company, without the knowledge or consent of the Cudahy Packing Company, thus affirmatively stating that the account was accurate and the amount is due by reason of the fraudulent agreement between one of its shipping clerks, unauthorized so to do, and the said C. E. Miller, and it therefore affirmatively appears that the claim is for the value of goods had and received, and grows out of the fact that the goods received were those of the Cudahy Packing Company which were stolen from it and received by the said C. R. Miller, with knowledge of the facts. Therefore, it affirmatively appears in the petition that there is no usury in the account and it appears as strongly and directly in the petition and affidavit and as affirmatively as though the words were used "that it is not usurious." The supreme court in the case of *Chaeirs* v. *Chaeirs*, 81 Miss. 663, is the chief case relied upon by the appellees to sustain their position that the affidavit in this case is not sufficient, counsel seeming to be under

the impression that that decision, and the decision which follows, held that there must be a literal compliance with the verbiage, as well as the spirit of the statute. Such a contention is not the law of Mississippi and was not the decision in the Chaeirs case. The Chaeirs case was a suit upon a note, and not upon an open account and, in holding that the affidavit did not comply with the statute the court says: "The probate in this case does not substantially conform to the requirements of the statute and did not invest the clerk with jurisdiction to allow and register it." . . . "We hold section 1932 to be mandatory, that the affidavit must be in effect what it prescribes. Both accounts and written evidence of debt must be accompanied by the substance of the prescribed affidavit. In the case before us the claim may be usurious for aught we know, we cannot say from its face that it is not, and the affidavit should show that it is not." The Court further says: "We do not now say whether the other omissions mentioned at the outset are fatal or not."

The other omissions referred to were that the word "correct" and that security has not been received therefor, except as stated, and that neither the affidavit, nor any other person has received payment, all were omitted from the affidavit, and yet the court in *Chaeirs* v. *Chaeirs* did not decide that so much of the affidavit being absent as the last words quoted was a defect, merely holding that in the case at hand, and where it did not appear from the face of the account, and they could not say from an examination of the account that the claim was not usurious that then that statement must affirmatively appear. The decision in *Chaeirs* v. *Chaeirs* therefore goes only to the extent that there must be substantial compliance with the statute. It was not intended by the court in that decision that the statute should be used as a tenter hook to defeat honest claims and as a means to destroy the rights of the individuals with honest claims who

sought to comply with the terms of the statute.   *Walker*
v. *Nelson*, 86 Miss. 268, was the next case, and that merely
refers to the case of *Chaeirs* v. *Chaeirs, supra,* and *Mc-
Wharter's case* in 39 Miss., both of which cases merely
hold that substantial compliance with the statute is neces-
sary.   The Walker case reconfirming *McWharter* v. *Mv-
Donald* to the extent that the claim must be signed by
the creditor.   Of this more hereafter.   *Saunders* v. *Stev-
enson,* 94 Miss. 676, is to the same extent.   It was a note
sued upon and the affidavit and the claim was signed by
the husband of the creditor and reaffirms *McWharter*
v. *McDonald, Chaeirs* v. *Chaeirs* and *Walker* v. *Nelson.*
The next case is the case of *Lehman* v. *Powe,* 95 Miss.
446, in which it is held by the majority of the court that
canceled bank checks drawn in the lifetime of decedent
and in his favor by the alleged creditor is without proba-
tive force to establish a claim in the drawer's favor against
the estate of the payee, but are not written evidences
thereof within the Code of 1906, section 2106, regulating
the probation of claims against estates of decedents.   From
this opinion Judge MAYES dissented.   The opinion of
the majority holding that the statute contemplates that
in presenting claims against the estate the evidence or
statement of same probated must on its face show a *prima
facie* right in the claimant to recover from the estate the
amount claimed, and that it must disclose the nature
and amount of the same with sufficient precision to bar
when paid an action therefor.   Nowhere does the main
body of the decision seek to carry the rule further than
that set forth in *Chaeirs* v. *Chaeirs,* in which substantial
compliance with the statute is all that is necessary.   If
mistaken in the above, and whether mistaken or not,
yet the claim must be allowed and the cause reversed,
because the will creates an express trust for the payment
of debts, which takes the claim out of the operation of
section 2107 of the Code.

An analytical investigation of the Mississippi cases
will disclose that whenever the construction of a will em-

powers and directs the executors as to the sale of property, the payment of debts and legacies and the management of the estate, the construction of the will shall be followed by the executor and the provisions therein contained shall so operate as to require the executor to pursue the course prescribed in the will, if it be lawful. Therefore such direction to the executor of estates in Mississippi, and that in that event a trust is created in express terms. Hill on Trusts, p. 516; *Abbey* v. *Hill*, 64 Miss. 340.

*Montgomery & Montgomery*, for appellees.

The account is not properly probated because the affidavit thereto does not contain the avermants required to be contained therein by section 2106 of the Code. This section is mandatory as to such requirements and must be strictly complied with or substantial compliance with it, which means of course, that it must contain the very words of the statute or words that mean the same thing. The affidavit must state that the account or claim is not usurious. See *Chaeirs* v. *Chaeirs*, 81 Miss. 662, in which it is expressly held by our supreme court that the direction of the statute is mandatory. The supreme court saying: "Up to this point, in view of previous decisions and previous statutes, it would seem plain that the legislature in the Code of 1892 designed to require as indispensable to jurisdiction all prerequisites to the allowance and registration, the making of the oath of probation in substantial compliance with section 1932 of that Code."

Further on in the decision the court says: "The probate in this case does not substantially conform to the requirements of the statute and did not require the clerk to allow and register it. The register, therefor, was not a sufficient presentation to the administrator to stop the running of the statute of limitations. We hold section 1932 to be mandatory. That the affidavit must be in effect what it prescribes." But counsel argue in their

brief that the proposition advanced by the court in the Chaeirs case is that the court could not say that the note probated was not usurious, was the reason they held that the affidavit, itself, must say that it was not usurious. But in this, we submit, that the counsel are in error, because the claim probated in the Chaeirs case was partly an account and partly a note and in the last part of the decision, the supreme court says: "Both accounts and written evidences of debt must be accompanied by the substance of the prescribed affidavit. In the case before us the claim may be usurious for all we know. No one can say from its face, that it is not and the affidavit should show that it is not." 81 Miss. l. c. 675.

We submit that the affidavit in the case at bar does not comply with the statute in several particulars, even if it were made by the creditor. The statute says that the affidavit shall state: "That the claim is just, correct and owing from the deceased." The affidavit says in this case: "That the claim filed is due, just and owing. That the facts set forth in the claim are within his knowledge, he having investigated the facts as agent and attorney for claimant and he knows them to be as in the claim set forth, to be accurately and truthfully stated." This is the entire affidavit made by an agent who says that he is the agent and attorney for the claimant. The statute says that the affidavit must also say: "That it is not usurious and that neither the affiant nor any other person has received payment in whole or in part thereof, except such as is credited thereon, if any, and that security has not been received therefor, except as stated, if any." No part of this requirement is complied with at all in this affidavit.

It is true that the petition or written statement of account, to which is attached this affidavit by the agent, and which is not signed by any officer of the Cudahy Packing Company but by an agent and attorney, does, itself, state that the account and every item thereon is

just and due and no part of the money stated to be due or any security or satisfaction of the same has been paid to or received by the petitioner or paid to or received by any person authorized to receive any security for petitioner or payment for or on behalf of the petitioner. And further on states the manner in which it was enabled to discover after the death of the testator, Miller, its supposed claim against him and to ascertain that the estate was justly indebted to it in the amounts claimed, but this petition is not the affidavit. The affidavit contains none of these averments, if they would be held to be a substantial compliance with the statute, which they are not, as we respectfully submit, even if they had been in in the affidavit itself. Therefore, we respectfully submit that if the executors had paid this claim, the court would have had no power to have allowed it in their settlement. See also *Lehman* v. *Powe*, 95 Miss. 446; *Perry* v. *West*, 41 Miss. 243; *Allen* v. *Hillman*, 69 Miss. 225.

We quote from Mr. Justice Smith in *Lehman* v. *Powe*, 95 Miss. 456: "In some states, probably in most of them, the statute does not require that claims shall be presented for probate in any particular form; but where the statute does so require, as is the case with us, it must be complied with. 8 Am. and Eng. Ency. of Law (2 Ed.), p. 1074." This very late adjudication of this question would seem to put the matter entirely at rest in this state.

We submit that the proposition contended for by appellant's counsel in their brief that the claim in question in this cause must be allowed whether probated, or not, because as they claim, the will of C. E. Miller creates an express trust for the payment of his debts, is not tenable. Those parts of the will necessary to be considered on this question, and cited by counsel in support of their contention, which quotations are found on page 21 of their brief, we submit do not create an express trust under our decisions and the cases cited by the counsel for the appellants. In *Abbay* v. *Hill*, 64 Miss. 340, the testator used

in his will words necessary to create an express trust, to wit: "And I do hereby charge and make liable all and every my real and personal estate and effects whatsoever and wheresoever, to the payment of the same, etc." See quotation of first and fifth articles of Richard Abbay's will, 64 Miss. 341. The supreme court says: "This will expressly charges the estate of the testator, both real and personal, with the payment of the debts, and invests his executors with power and discretion to sell the whole or any part of his estate for the payment of his debts. Charging his debts upon his real estate in this manner amounts to the same thing in equity as if the testator had devised it expressly in trust to pay his debts. Hill on Trustees, 527." But the court says: "Here, where all of a decedent's real and personal property is liable for the payment of his debts a trust on real estate for the purpose will not be implied or derived from ambiguous or uncertain testamentary provisions." Citing *Stule* v. *Stule*, 64 Ala. 438.

The case of *Templeton* v. *Tompkins*, 45 Miss. 424, is a case where the testator expressly made a legacy a charge on his real estate. The case of *Gordon* v. *McDougal*, 84 Miss. 715, cited by counsel is a case of express trust and the court in that case, arrived at the conclusion that the debts of the testator are made an express trust upon the estate by taking the whole will and reading it altogether, from which the court concludes as follows: "We are clearly of opinion, without protracting these observations, that Mr. Baldwin's will created an express trust for the payment of his debts, and consequently that under section 1838, Code 1892, as well as the general principles applicable to such trusts, the statute of limitations invoked against these unprobated claims is no bar, and the executors were fully justified in the payment of the same." But this court will observe by reading the will of Mr. Baldwin, which is copied *in extenso* in the opinion, and the will in the case at bar, that there is a vast difference

between the provisions of the two wills. The court says: "The language employed in a single sentence is not to control against the purpose shown by the whole instrument, effect is to be given to the general intent and this we think is shown throughout the will." Quoting from *Watkins* v. *Snaden*, 20 S. W. 701. Again quoting from *Murphy* v. *Carlin*, 20 S. W. 786, the court says: "The true intent and meaning of the testator can be best ascertained by the courts by putting themselves, so far as may be, in the place of the testator and reading all his directions therein contained, in the light of his environment at the time it was made. When that intent and meaning can thus clearly be ascertained then all technical rules in adjudicated cases in other jurisdictions which stand in the way of its execution must be disregarded."

Our proposition is that the mere requirement of his executors to pay the debts out of his estate and giving them authority to sell, which they already have, under the statute, by permission of the court, for the payment of debts does not of itself, create such an express trust in the lands for the payment of all possible claims, as would justify the court in taking this case out of the ordinary course of admiration. Because, Miller provided in his will that his executor should pay all of his just debts, including his burial expenses and doctor's bills during his last illness, and the cost of a monument over his grave, out of any money he might die possessed of and if there were not sufficient moneys, out of the proceeds of the sale of personal property, or if necessary, his lands might be rented by the executor and his debts paid in that way. We submit that the case of *Guin* v. *Nettles*, decided by this court in December 1895, reported in the 18 So. 798, is a case in point with the case at bar. We submit that it is impossible to find a case more clearly in point with the case at bar, than is the case just cited. In that case, the executor was expressly authorized to sell any part of his estate, real or personal, for the payment of his debts

and was expressly directed to pay the debts out of the estate. Where as, in the case at bar, the provisions of the will are not nearly so strong.   See the quotation of these provisions on page 21 of appellant's brief.   In view of the Mississippi authorities cited and especially the case last cited, we deem it unnecessary to cite further authority on this proposition and we submit that a failure of the appellant to probate its claim according to law deprived the court of jurisdiction to consider it and that the demurrer was properly sustained and the claim disallowed, and that the decree of the chancellor should be affirmed.

SMITH, C. J., delivered the opinion of the court.

The affidavit attached to the claim sought to be probated fails to comply with section 2106 of the Code in several particulars, among which is that it contains no allegation that "it"—the claim sought to be probated —"is not usurious."   But it is said by counsel that it appears from an inspection of the written statement of the claim that it is not usurious.   In this we think counsel are in error; but whether or not it so appears is immaterial.   This fact must appear from a specific allegation to that effect, and not from a construction of the language in which the claim sought to be probated is couched. *Cheairs' Ex'rs* v. *Cheairs' Adm'rs*, 81 Miss. 663, 33 So. 414.

But, say counsel for appellant, the will of the decedent "creates an express trust for the payment of debts," and therefore the defects in this affidavit are immaterial for the reason that where such a trust is created it is unnecessary to probate claims against the estate.   In this counsel are in error.   The will creates no express trust for the payment of debts; nor does it do so by necessary implication.   The provisions of the will to which our attention is called in this connection are:   "It is my will that at my death that all of my just debts, including burial expenses, doctor's bills during my last sickness,

and the debts that may be incurred by my executors in erecting a suitable monument to my grave, shall first be paid, and that the same be paid out of moneys I may die seised and possessed of, and if there be not sufficient moneys on hand, then out of the proceeds of any personal property other than money I may die seised and possessed of, or if necessary my lands that I die seised and possessed of, be rented by my executors, and the debts paid in that way.    At all events I desire that none of my lands be sold to pay debts if it be possible to prevent such.    . . . I will that they carry out faithfully and promptly each and every provision of this my last will and testament, and further it is my request that they be not required to file an inventory or have an appraisement made of my estate, or any report to the court, save a final report showing that all of my debts have been paid and my devises and bequests have been promptly and faithfully carried out, as herein directed."

By operation of law, all of the property of the testator owned by him at the time of his death was charged with the payment of his debts, and his executors were likewise charged with the duty of applying it to the payment thereof.    What the testator manifestly intended by the first item of his will herein set forth was simply to direct the manner in which his executors should discharge this duty which the law imposed upon them.    Since all of a decedent's property is charged by law with the payment of his debts, a trust to that effect, which would render inoperative probably several provisions of the statute enacted for the safeguarding of estates, will not be inferred from language in a will directing the manner in which this duty shall be performed, unless such clearly appears to have been the testator's intention.    *Steele* v. *Steele*, 64 Ala. 459, 38 Am. Rep. 15; *Abbay* v. *Hill*, 64 Miss. 351, 1 So. 484; *Gwin* v. *Nettles*, 18 So. 798; *Gordon* v. *McDougal*, 84 Miss. 715, 37 So. 298, 5 L. R. A. (N. S.) 355.

*Affirmed.*