COHN *et al. v.* McCLINTOCK.

[66 South. 217.]

EXECUTORS AND ADMINISTRATORS. *Trust necessity of presentation of claims. Trust for payment of debts. Provision of will.*

A will providing: First, "My will is that all my just debts and funeral expenses by my executors hereinafter named, to be paid out of my estate as soon after my death as shall by them be found convenient," and second, "After payment of my debts by my executors, who are also trustees herein, a one-sixth interest each of my said estate shall be paid over to my said children

from the cash on hand, and as soon as the sale of any property is consummated," did not create an express trust for the payment of debts, rendering it unnecessary for a creditor to have his debts probated and registered within one year after the first publication of notice to creditors as required by Code 1906, section 2107. Since the first clause meant only to direct his executors to pay his debts, which they were required to do by law, the second clause merely directed the payment of debts in preference to the distribution of the estate and this too, was the duty of the executors under the law.

Appeal from the circuit court of Washington county.
Hon. Monroe McClurg, Judge.

Action by J. W. McClintock, against Jake Cohn and others, executors of the estate of M. Cohn. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Campbell & Cashin,* for appellant.

It appears, that the sole question for the determination of this court is whether the will of M. Cohn, deceased, created an express trust for the payment of his debts, so as to render inoperative the provisions of sections 2105, 2106 and 2107 of this Code of 1906, in reference to the registration and probation of claims against the estate of a decedent.

As we understand the rule in this country, and the law as declared by this court, no express trust will be implied, and such a trust must be created, if at all, by plain, clear, precise and unambiguous language. "A general provision for the payment of debts is not sufficient to raise such a trust, but the will must clearly show that such was the intention of the testator." 8 Am. & Eng. Ency. Law, page 1083, note 5 and authorities there cited. "Nor will the direction that certain property be sold for payment of the debts be sufficient to create such a trust." *Carrington* v. *Manning,* 13 Ala. 611, 8 Am. & Eng. Ency. of Law, page 1083.

As stated by COLLIER, C. J., in *Carrington* v. *Manning,* 13 Ala. 611: "Would it not be unjust to raise a trust which would render inoperative the statutes of nonclaim and limitations, from the mere fact that the will made the land primarily liable for the payment of testator's debts, when he never could have contemplated such a consequence?"

Certainly, it cannot be said to be clear from the language of the will that it was the purpose of the testator to create an express trust for the payment of his debts, so as to require the executors to pay the same, whether they should be probated and registered against the estate or not, and so as to render inoperative the provisions of section 2107 of the Code of 1906.

It is true that section 2103 of the Code of 1906, provides that the directions contained in any last will and statement, if not unlawful, shall be followed by the executors; but, so far as we have been able to ascertain there is no authority holding that the mere expression by the testator in his will of a desire that his debts shall be paid, creates an express trust for the payment of his debts, so as to render inoperative the statutes requiring the probation and registration of claims against decedents.

The learned circuit judge who rendered the judgment appealed from in this case, seemed to think that *Gordon* v. *McDougall,* 84 Miss. 715, was an authority which required him to hold that the language of the will of M. Cohn, deceased, created an express trust for the payment of the testator's debts. We are unable to agree with this conclusion of the learned judge below. Taking all of the provisions of the will in that case, eight in number, into consideration, the court simply held that the language of the will clearly manifested a proud spirited purpose on the part of the testator to have his debts paid, at all events, not in the manner and within the time required by law, but that the will by creating annuities, forbidding his wife as executrix to claim any commissions

or allowance, and directing that the estate be kept together, and managed and controlled by the executors, and authorizing them to sell, in their discretion any property that they might see fit, for the payment of the debts, and to use the income and profits arising from the estate in the payment of the debts, clearly evinced a purpose on the part of the testator to create an express trust for the payment of his debts.

The provisions of the will in that case are entirely different from the provisions under consideration now in the case at bar, and granting that the language of the will in *Gordon* v. *McDougall,* clearly manifests an intention on the part of the testator to create an express trust for the payment of his debts, still, we respectfully submit that no such purpose and intention can be fairly inferred from the language of M. Cohn's will, and it certainly cannot be said that such a purpose, as gathered from the said language is clear, precise and unambiguous. It does nothing more than direct that his debts be paid, and as the law requires this to be done anyway, regardless of the testator's wishes, it is held that such phrases are meaningless.

If the provisions in the will under consideration in *Gwin* v. *Nettles,* 18 So. 798, do not create an express trust for the payment of the testator's debts, clearly it cannot be held that the language in this will manifests an intention and purpose on the part of the said testator to create an express trust and a charge upon his property for the payment of his debts. As sustaining our position in this case, we respectfully refer the court to the following authorities: 8 Am. & Eng. Ency. of Law, 1083; 2 Perry on Trusts, sec. 559; *Abby* v. *Hill,* 64 Miss. 340; *Gwin* v. *Nettles,* 18 So. 798; *Steel* v. *Steele,* 64 Ala. 459, s. c. 38 Am. Rep. 15; *Cudahy Packing Co.* v. *Miller's Estate,* 60 So. 574 (the opinion in this being delivered by this court on January 27, 1913).

We respectfully submit that the judgment below should be reversed and a judgment rendered in this court for the appellants.

*W. S. Knotts,* for appellee.

I respectfully submit that the will of M. Cohn creates an express trust for the payment of his debts, that the decision of the learned circuit judge was correct and should be affirmed by this court. To sustain the position of the appellee in this case, the court is respectfully referred to the following authorities: *Clark* v. *Hornthal,* 47 Miss. 434; *Abbey* v. *Hill,* 64 Miss. 340, 1 So. 484; *Gordon* v. *McDougal,* 84 Miss. 815, 37 So. 298; *Morse* v. *Hackensack Savings Bank* (N. J. Err. & App.), 20 Atl. 961, 12 L. R. A. 62; Story's Equity Jurisprudence, sec. 980; 49 Cent. Dig., Title "Wills," sec. 1579.

COOK, J., delivered the opinion of the court.

This case was submitted to the circuit judge, a jury being waived, upon an agreed statement of facts, substantially as follows:

(1) That M. Cohn, of Belzoni, Washington county, Mississippi, died on the 3d of December, 1910, leaving a last will and testament, a copy of which is made a part of said agreed statement of facts, and that, at the time of his death, he was indebted to the appellee in this case in the sum of one hundred and twenty-two dollars and eighteen cents, for insurance premiums.

(2) That the appellants duly qualified as executors of the last will and testament of said M. Cohn, deceased, and letters testamentary were issued to them by the chancery court of Washington county, Mississippi.

(3) That thereafter said executors made publication for creditors in accordance with the provisions of section 2103 of the Code of 1906, to register and probate their claims against said estate within one year, notifying them that a failure to so register and probate said claims

would bar them; that more than one year had elapsed since the first publication of the said notice; that proof of said publication was duly filed; and that the claim of the appellee was never probated, and that more than one year has expired since the first and since the last publication of the said notice to creditors.

(4) The defendants deny any liability on the account sued on, because of the failure to probate and register the same within one year, as required by section 2107 of the Code of 1906.

The appellee claims that it was unnecessary to probate and register the claim, as, he contends, the last will and testament of M. Cohn, deceased, created an express trust for the payment of his debts, and therefore it was unnecessary to probate and register the claim as required by said section 2107 of the Code of 1906.

Suit was brought by the appellee on said claim before a justice of the peace, who rendered judgment in favor of the appellants, from which judgment the appellee prosecuted an appeal to the circuit court, in which court, as stated, the said cause was submitted to the circuit judge, a jury being waived, upon the foregoing statement of facts, and the said circuit judge held that the will of M. Cohn, deceased, created an express trust for the payment of his debts, and that therefore the appellants were liable to the appellee for the payment of this debt, and said judge rendered a judgment against them accordingly, from which judgment this appeal is prosecuted.

Omitting the formal parts, the will in question reads this way:

"As to my worldly estate, and all of the property real, personal or mixed, of which I shall die seised and possessed, or to which I shall be entitled at the time of my death, I devise, bequeath and dispose thereof in the manner following, to wit:

"1. My will is that all my just debts and funeral expenses, by my executors hereinafter named, to be paid

out of my estate as soon after my decease as shall by them be found to be convenient.

"2. I give, devise and bequeath to my four children, Abe Cohn, Jake Cohn, Mrs. Freda Davidow and Mrs. Pauline Castleman, share and share alike, a policy of life insurance in the order of Knights of Honor amounting to two thousand dollars, and a policy of life insurance in the order of Knights of Pythias amounting to three thousand dollars."

"4. I give, devise and bequeath to my beloved wife, Hannah Cohn, so long as she shall remain unmarried, all of lot number twenty-one (21) of M. Cohn's subdivision of lots 129, 130 and 134 of the Briley addition to the town of Belzoni, Mississippi, according to map, or plat, of said M. Cohn's subdivision in May Book Number 2, on page 9, in the office of the chancery clerk of said county, said property fronting one hundred and sixty-four feet on Church street, and running west towards Hayden street a distance of two hundred and forty feet, being the property on which is now situated our residence; said gift to my said wife is not made to her in fee simple, but for so long as she shall remain unmarried; upon her marriage, and upon her death before marriage, said legacy shall cease and determine as to her, and same shall vest in my granddaughter, Esther Davidow, if she be then living; and if she be then not living, said legacy shall vest in my granddaughter, Henrietta Davidow, and Sylvia Davidow as tenants in common, if they both be then living, and if either of them be not then living, then to the survivor of them; and if both of them be not living, then said legacy shall vest in the brothers and sisters of them as tenants in common. I also give, devise and bequeath to my said wife, Hannah Cohn, all of my household and kitchen furniture, and said gift of household and kitchen furniture to my said wife is made to her in fee simple.

"5. I give, devise and bequeath to my said wife, Hannah Cohn, and her children by me, share and share alike,

all of the stocks, bonds and other securities, and all of the personal property not otherwise disposed of, of which I may die seised and possessed.

"6. I give, devise and bequeath to my sons, Jake Cohn and Abe Cohn, and to their successor or successors in office, as hereinafter provided, all the rest and residue of my property, real, personal and mixed, *in trust, nevertheless* to be managed, controlled, sold and disposed of as follows:

"A. If the 'Fisk' or 'Belzoni' plantation in Washington county, Mississipi, adjoining the town of Belzoni, and now owned by Morris Levy and myself as tenants in common, shall not have been partitioned at the time of my death then it is my will that said trustees cause said property to be partitioned as soon after my death as it is practicable to do so; and the same shall be kept together for ten years, and planted, farmed, leased or rented as said trustees may deem most advantageous, *except* such portion thereof as may be laid off into town lots, and such other parts thereof as may be sold by said trustees as hereinafter provided.

"B. Said trustees are authorized and empowered to dedicate from time to time, as they may thing advisable, from the land comprising said 'Fisk' or 'Belzoni' plantation, various additions to said town of Belzoni, and cause to be prepared the necessary maps and plats thereof, and they shall sell said lots from time to time, for cash or on credit; and they are further authorized and empowered to sell from said plantation small tracts of land for cash or on credit, where such sales are in their opinion advantageous and for the best interest of my said estate.

"C. Said trustees are also authorized and empowered to sell any and all real estate owned by me at the time of my death (not hereinbefore devised) for cash or on credit, and the same shall be held in trust and paid over to my children and my wife as hereinafter directed. The

property to be sold not to include the 'Fisk' or 'Belzoni' plantation as provided in item A above.

"D.   Full power and authority is hereby vested in said trustees to execute any and all deeds of conveyance to my real property sold by them, and any other instruments that may be necessary in the manageemnt and control of my said estate, and all the property, real and personal, sold by them as trustees as aforesaid, shall be released and discharged from any express or implied charge against the same by my children and wife, and the purchasers thereof shall take a good and perfect title to the property sold by said trustees; and no purchaser shall be bound to see to the application of the purchase money, or other consideration paid therefor.

"E.   I give, and bequeath from said trust estate *one-sixth* each to my five children, Abe Cohn, Jake Cohn, Freda Davidow, Mrs. Pauline Castleman and Maurice Cohn, and my said wife Hannah Cohn.

"F.   After the payment of my debts by my executors, who are also trustees herein, a *one-sixth* interest, each in my said estate shall be paid over to my children and my said wife from the cash then on hand and as soon as the sale of any property is consummated.

"G.   At the end of said ten years, said 'Fisk' or 'Belzoni' plantation then remaining shall be divided between my said children and my said wife in the proportion of *one-sixth,* each to my said children and my said wife.

"7.   I appoint my sons, Abe Cohn, and Jake Cohn, trustees herein, executors of this my last will and testament, and request that the court will require no bond of them as such; and should either of them die before the completion of the trust reposed in them, then I request that the survivor of them then be appointed executor herein; and should he die before the completion of this trust, then I request that the court appoint an executor to carry out the provisions of this will and trust."

It will be noted that the only reference made by the testator in his will to the payment of debts is contained in two clauses, which are as follows:

(1) "My will is that all my just debts and funeral expenses by my executors hereinatfer named, to be paid out of my estate as soon after my death as shall by them be found convenient."

(2) "After payment of my debts by my executors, who are also trustees herein, a one-sixth interest each of my said estate shall be paid over to my said children from the cash on hand, and as soon as the sale of any property is consummated."

The first clause is the usual stock phrase employed by writers of wills, and it cannot be contended that the testator meant anything more than to direct his executors to pay his debts, and this is what they were required to do by the law. The second clause merely directs the payment of debts in preference to the distribution of the estate, and this, too, was the duty of the executors under the law.

The case mainly relied on by appellees to uphold the judgment of the court is *Gordon* v. *McDougall,* 84 Miss. 715, 37 So. 298, 5 L. R. A. (N. S.) 355. The will in that case is quite different from the will in this case, and the court was of the opinion that the will in that case, taken as a whole, evinced a purpose on the part of the testator to create an express trust for the payment of debts.

This will seems to be practically the same as the will construed in *Cudahy Packing Co.* v. *Miller,* 60 So. 574. The language employed by this court in the above case is peculiarly applicable to this case. There is no substantial difference in the will in the Cudahy case and the will in the instant case.

*Reversed and dismissed.*