## ESTATE OF J. M. BOYD v. R. E. THOMAS.[1]

February 6, 1925.

No. 24,372.

**Claims on contract against estate must be allowed by probate court before payment by its representative.**

1. A representative cannot pay claims against the decedent arising on contract and have them allowed in his final account, if they have not been filed with and allowed by the probate court as required by section 7323, G. S. 1913.

**Rule the same as to secured claims.**

2. Neither may he pay a secured claim and include it in his final account in disregard of the provisions of section 7342, G. S. 1913.

*Headnote 1. See Executors and Administrators, 24 C. J. p. 323, § 943; p. 377, § 1051.

Headnote 2. See Executors and Administrators, 24 C. J. p. 334, § 955.

H. L. Wood was appointed executor of the estate of J. M. Boyd, deceased, by the probate court for Polk county. He resigned and filed his final account. Lucetta F. Boyd filed objections to the allowance of the account, which was disallowed as to money paid to creditors whose claims had not been allowed by the court. From the order of the probate court, Hovland, J., the executor appealed to the district court for that county where the appeal was heard by Watts, J., who affirmed the order of the probate court. From an order denying his motion for a new trial, the executor appealed. Upon the death of H. L. Wood, R. E. Thomas was appointed his executor. Affirmed.

*A. N. Eckstrom* and *W. E. Rowe,* for appellant.

*Grady & Fosmark,* for respondent.

WILSON, C. J.

By his will J. M. Boyd, now deceased, appointed H. L. Wood

[1]Reported in 202 N. W. 60.

executor thereof. Among other things, the will in the usual language directed the executor to pay his debts. It directed certain lands to be held by the executor in trust for five years. It further provides: "It is also my wish that all personal property which I may own at the time of my death and the residence property which I have in the city of Warren, shall be sold by my executor as soon as possible and that the proceeds thereof be applied upon my indebtedness, and the said executor is hereby directed to sell and dispose of said property accordingly." The will was admitted to probate on January 31, 1919. On February 6, 1919, an order was made limiting time to file claims to six months from that date, and fixing August 7, 1919, as the day for hearing on claims. No claims were filed and hence none were allowed. On July 14, 1919, the executor was licensed to sell the residence in Warren. Report of sale was made September 4, 1919, and the same was confirmed upon that date. The executor resigned October 27, 1923, and on that date filed his final account in which he credited himself with money paid as interest on a mortgage on some of the land, and with payment of claims of creditors as follows, to-wit:

1919
Dec. 17 First Nat. Bank paid to apply on interest   $ 121.15
1920
Nov. 20 First Nat. Bank paid to apply on interest     172.18
                Claims of creditors.
        Lundgreen, Wittensten & Co. ................ 430.31
        Warren Machine & Iron Works Co. .......... 2,085.15
        Peoples Trading Co. .................... 116.79
        First Nat. Bank, Warren, Minn. ............ 1,485.00

        Total ............................. $4,410.58

The deceased left a widow, and also seven children who had reached their majority. The widow filed objections to the allowance of the account in respect to the items aggregating the $4,410.58, on the ground that the executor had no right to pay

them because they were not filed with and allowed by the court as provided by statute. The probate court disallowed these items in the account and the executor appealed to the district court. Upon the trial in the district court the executor's evidence, and offers to prove by which he attempted to show: (1) Payment of the several items; (2) that one of the items was paid at the special request of the heirs of the estate of J. M. Boyd; (3) that the claims were all provable claims against the estate; (4) that the personal property and the residence were sold and the proceeds used to pay these debts; (5) that decedent at the time of making the will mentioned these creditors as the ones he wishes paid; (6) that all the heirs had full knowledge of the payment of these claims and made no objection to payment thereof, were excluded. All this evidence was excluded by the court because the claims had not been filed with and allowed by the probate court. The district court affirmed the probate court, and the executor has appealed to this court.

May an executor pay claims arising on contract against the estate without their having been first allowed by the court and then include them in his final account as a disbursement?

Section 7323, G. S. 1913, specifically provides that all claims arising on contract must be presented to the court for allowance or be forever barred. This statute means just what it says, and a creditor has lost his claim of such character, if he does not so present the same to the probate court for allowance. Fitzhugh v. Harrison, 75 Minn. 481, 78 N. W. 95; Gilman v. Maxwell, 79 Minn. 377, 82 N. W. 669; Clark v. Gates, 84 Minn. 381, 87 N. W. 941; Jorgenson v. Larson, 85 Minn. 134, 88 N. W. 439; Security Trust Co. v. Black River Nat. Bank, 187 U. S. 211, 23 Sup. St. 52, 47 L. ed. 147; Bunnell v. Post, 25 Minn. 376; Winter v. Winter, 101 Wis. 494, 77 N. W. 883; Fields v. The Estate of Mundy, 106 Wis. 383, 82 N. W. 343, 80 Am. St. 39; 2 Woerner, Law of Adm. (3d. ed.) § 400. It is not sufficient to present such claims to the administrator or executor. "That, under our probate practice presentation of claims against an estate must be made to the court and not to the administrator, is clear from the fact that the administrator may not pay any claim or receive credit therefor in his account, unless the

court, within the time limited by the order referred to, acted thereon." State v. Probate Court Hennepin Co. 145 Minn. 344, 177 N. W. 354, 11 A. L. R. 242. If an administrator or executor may disregard the noncompliance with the statute and pay claims to which it relates without allowance by the court, this mandatory statute would be a nullity. An act of the legislature could not be plainer than this one and its construction is easy. It must be obeyed.

By section 7322, G. S. 1913, the probate court is authorized to extend the time for cause and receive and allow a claim when presented before final settlement and within one year and six months after the time when notice of the order was given. Schurmeier v. Conn. Mut. Life Ins. Co. 171 F. 1, 96 C. C. A. 107. Opportunity under this statute expired August 7, 1920. Whether a claim must be made against an estate within a limited time does not depend upon the discretion of the court. The probate court fixes the time in the first instance. Between 6 and 18 months the probate court may have power of discretionary action on good cause shown. Having fixed the time at six months, as was done in this case, any extension of that time could only be had, upon good cause shown, within the limit of 18 months which has long since expired. Security Trust Co. v. Black River Nat. Bank, 187 U. S. 211, 23 Sup. Ct. 52, 47 L. ed. 147. The representative has no authority to pay an unsecured claim arising out of contract until it is formally allowed by the court. The statute is not only a rule of law, but it is a rule of property. The representative cannot waive the bar created by statute. He cannot abrogate the statute either in his own interest or in favor of others. The creditor must comply with the statute which is universal in its application to a specified class of creditors. The decedent cannot extend the time by agreement before his death. McDaniel v. Putnam, 100 Kan. 550, 164 Pac. 1167, L. R. A. 1917E, 1100.

An effort is made to bring this case within the application of the doctrine of Gordon v. McDougall, 84 Miss. 715, 37 South, 298, 5 L. R. A. (N. S.) 355, wherein the court holds that where the will creates a trust for the payment of debts, unproved claims may be paid by the executor without submitting them to the court. In

the Gordon case the court reached its conclusion because of several unusual and peculiar provisions in the will which were construed as significant, but they are not present here. The only thing that the assertion is based on in this case is the direction to pay debts and the fact certain property is directed to be sold for that purpose, and the fact that certain lands are to be held in trust for five years. In fact, in Mississippi, when a specified claim is expressly recognized as a debt and charge on the estate, an authorized trust is saddled on the executors to pay it and it need not be presented to the court. O'Reilly v. McGuiggan, 91 Miss. 498, 44 South. 986, 15 Ann. Cas. 623. Whether a trust has been created so as to call for the application of the rule under consideration depends upon the intention of the testator which is to be derived from the will. In the Gordon case the court took all the provisions of the will, eight in number, into consideration and concluded that the language evinced a purpose on the part of the testator to create an express trust for the payment of his debts.

In Cohn v. McClintock, 107 Miss. 831, 66 South. 217, the same court held that where a testator provided "all my just debts  *  *  * by my executors  *  *  *  be paid  *  *  *  as soon after my death as shall by them be found convenient," and second, "after the payment of my debts by my executors, who are also trustees herein, a one-sixth interest of my said estate shall be paid over to each of my said children from the cash on hand, and as soon as the sale of my property is consummated," did not create a trust for the payment of debts rendering it unnecessary for a creditor to file his claim with the probate court, since the first clause meant only to direct his executors to pay his debts which they were required to do by law, and the second clause merely directed the payment of debts in preference to the distribution of the estate, and this too was the duty of the executors under the law. In this case as a comparison to the case under consideration, it may be noted that the executors were expressly made trustees to manage, control, sell and dispose of several plantations. They were authorized to convey. The will contemplated a trust for ten years. The facts here are more similar to the facts under consideration than are the facts in the Gordon case, and the conclusion is more persuasive.

In Carrington & Co. v. Manning's Heirs, 13 Ala. 611, a testator said: "It is my will" that certain property "be sold and proceeds applied * * * to the discharge of my debts." He directed his executors to keep his estate until all debts were paid. He also provided that a certain property should not be divided until debts were paid. It was held that the will did not create a trust by implication in favor of the creditors so as to prevent the bar of the statute of non-claim.

Whether there is a trust or not is a question of interpretation upon the rules we recognize as applicable to other written instruments. Steele v. Steele's Admr. 64 Ala. 438, 459, 38 Am. Rep. 15.

The general provision for the payment of debts is no support to the claim that the will creates a trust for the creditors. Upon this subject the court in Collamore v. Wilder, 19 Kan. 67, on page 82 said:

"Such formal and general language in a will is meaningless, and has no authoritive [sic] force. The law compels the payment of all just debts of any decedent, where there are sufficient assets, and the legal steps are pursued to obtain a recovery thereon. Hence, these words give no power to an executor, nor deprive him of any authority. They will not strip an estate of a just defense, nor can a party who neglects a proper presentation and proof of his demand invoke these words successfully to his aid, after he has suffered the estate to be settled and the administration closed. Peck v. Botsford, 7 Conn. 172; Martin v. Gage, 5 Selden, 398; Bloodgood v. Bruen, 4 Selden, 362."

The direction to pay debts is the ordinary direction and the will fails to disclose any intention that the testator did not mean and intend such debts as had to be paid, i. e., such debts as the court would allow. A mere formal direction in a will that all debts must be paid does not obviate the necessity of presenting the claims for allowance as provided by statute. 24 C. J. 322. This language is used in compliance with custom. Peck v. Botsford, 7 Conn. 172, 18 Am. Dec. 92. It does not revive a debt barred by the statute of

limitations. Roosevelt v. Mark, 6 John. Ch. 266, 293. He clearly did intend that the personal property and the residence in Warren should be sold, and he expressed the wish that the proceeds be used to pay his debts. But the language is clearly insufficient to impress a trust, therefore, upon this property in favor of the creditors of such a character as to authorize the action of the executor independent of the probate court. This contention, at least, has the charm of novelty, but it is apparently an afterthought. Otherwise the executor would not have applied to the probate court for license to sell the residence property. He did not assume to convey the property under the authority of the will, but on the contrary he apparently assumed that it was proper and expeditious for him to pay honest debts of the decedent. If by a strained construction we may say that the language "to sell and dispose of" authorizes the executor to convey without a license from the probate court, it is to be observed that the legal description of the Warren residence is not given. The record of a certified copy of the will in the office of the register of deeds with the deed of conveyance, would not make a good record title and if title could be conveyed an action to quiet title would be necessary to make a good record title. Such a burdensome procedure does not commend the construction urged, and this circumstance rather destroys the claim that the testator intended to create the alleged trust which could easily have been indicated by simple language. However his will must be construed so that the suggestion that the proceeds from such sale be applied upon the indebtedness was merely an expression of a wish. The will is silent in respect to the unusual procedure of the executor going out and passing upon the claims and paying them without their being first allowed by the court. We must assume, in the absence of a manifestation of a different intention, that the testator intended his estate to be administered in the usual, regular and legal procedure.

When a person dies, title to his real estate descends instantly to his heirs or devisees subject to the payment of debts and the burden of administration. Title to his personal property vests in the representative the very moment he is appointed and qualified. He is the

owner of it, but not in his own right. He holds it in trust, first to pay debts and lawful charges, then to be divided as the will or law of distribution declares. He holds the possession of the real estate in trust for the same general purposes for which he holds the personal property. Upon the death of the owner his moral obligation to pay his financial obligations dies with him and in place of his personal obligation to pay the law substitutes claims to share in his property. All representatives are therefore considered as trustees. The claims of creditors are equitable estates in the trust property.

At common law lands owned by a decedent were not liable for the payment of the claims of simple contract creditors. Hence there was an inclination, because of a desire to have honest debts paid, to construe the language in wills to create a trust on real estate in favor of the creditors. Jarman on Wills has said: "It seems to be generally admitted that the courts have allowed their anxiety to prevent moral injustice, and that men should not sin in their graves, to carry them beyond the limits prescribed by established general principles of construction." It is quite natural that terms not always persuasive should be construed to create a trust to protect the honest creditor. Men cherish justice and honest dealing. They are pleased to see others dealt with fairly. Judges are but men and in the exercise of honest effort may unconsciously yield in their construction of the law to the support of that contention which prevents a harsh result in the instant case. But in this age where all property is liable for debts and, in fact, is subjected to a trust in favor of creditors, under the law, no leniency may be extended to encourage the claim of an expressed trust of the character here involved.

What is the purpose of the trust for which the present contention is made? All the property involved is subject to the payment of debts. The alleged express trust would add nothing. It would not give the creditors any better trust or lien than they had by virtue of the law. The decedent could not deprive the creditor of his claim against this property which the law gives him. The testator has the right to make the suggested trust, but why should he? What

did this testator have to gain and what is there in the will to justify the conclusion that he was intending to provide for that which was by law already fixed? Can it be said that the testator intended to relieve the creditors from filing their claims? That was the only natural object if the alleged intention was present. It would be a rather unusual thing for the testator, who was a farmer, to intend such a result. There should be an apparent reason for attributing such intention to the mind of a layman. It is more natural to suppose that the testator never considered the advantages accruing from the nonclaim statute which aids in an expeditious administration of the estate and is beneficial to the heirs as a protection against dormant claims and promptly puts them in unrestricted control of their own. The policy of the non-claim statute is wholesome. The intention of the legislature is clear. It is the duty of the court to support the intention of the legislature. If a trust can be read into this will it would be hazardous for a testator to give any directions in respect to his property or the order of disposition thereof. What are the consequences? If the trust is created and claims are not to be filed, when may the estate be safely closed? The probate court does not administer trusts, and, if such a trust is created, the duties of the executor, instead of being controlled by the statutes which apply to the estates of deceased persons, must look to a court of equity for guidance. Moore v. Kirkman, 19 Wash. 605, 54 Pac. 24; McDonald v. Frater, 29 Wash. 422, 69 Pac. 1111. Our policy is inconsistent with such trusts. They make the executor a mere trustee who is not under the direction of the probate court. Indeed, his bond to that court would not reach his conduct. A trust is not to be presumed; it must appear from the language in the instrument. A trust which renders inoperative a statute enacted for the safeguarding of estates will not be inferred. Cudahy Packing Co. v. Miller's Estate, 103 Miss. 435, 60 South. 574.

It would seem, therefore, that this will has not created such a trust as permitted the representative to handle it outside the jurisdiction of the probate court but, on the contrary, it left the entire matter for administration in the usual way, except that it directed the

personal property and the residence to be first resorted to for the payment of debts. This direction was permissible. If this was insufficient the rest of the nonexempt property would be available. A testator may well indicate which he wishes to be used first for this purpose and that is all that may be said for this direction. Section 7343, G. S. 1913. Of the claims so paid by the executor are three items amounting to $1,778.33 which was applied upon a secured claim, that is, as interest and payments upon a mortgage on lands owned by the estate. Here again there was a failure to meet the statutory requirements of section 7342, G. S. 1913.

Because the language of the will was insufficient to create a trust the exclusion of the testimony by the trial court was proper.

Affirmed.